# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* A.E.-1

No. 18-0220 (Jefferson County 17-JA-23)

## MEMORANDUM DECISION

Petitioner Father A.E.-2, by counsel Christian J. Riddell, appeals the Circuit Court of Jefferson County's February 9, 2018, order terminating his parental rights to A.E.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Tracy Weese, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. Respondent Mother K.R., by counsel Melanie Jesteadt, filed a response, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and finding that he abandoned the child.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2018, the DHHR filed a child abuse and neglect petition against petitioner and the mother. The DHHR alleged that a referral indicated that the mother had a psychotic break after taking several of her prescribed medications and smoking marijuana. Neighbors saw the mother "ranting" outside her home and walking in the streets. According to the DHHR, the mother had a long, untreated history of mental illness and substance abuse. Regarding petitioner, the DHHR alleged that he lived in Chicago, Illinois, had not seen the child in two years, failed to provide for the child, and abandoned the child.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to them as A.E.-1 and A.E.-2, respectively, throughout this memorandum decision.

[2]Petitioner does not raise a specific assignment of error regarding the termination of his parental rights.

The circuit court held an adjudicatory hearing in December of 2017. Petitioner attended the hearing via telephone and testified that he had only seen the three-year-old child twice since he moved to Chicago, six weeks after the child's birth. He stated that he was not able to travel to see the child often because of his financial situation. Petitioner admitted that, during prior family court proceedings, his monthly child support obligation had been reduced by $100 a month in order to facilitate more visits with the child, but he had yet to visit in 2017. Further, petitioner testified that he tried to see the child through a video platform, such as Skype and FaceTime, but the mother often denied him the opportunity. Petitioner admitted that he had been granted visits with the child in November of 2017 and around the time of the adjudicatory hearing, but cancelled them. After hearing evidence, the circuit court found that petitioner offered several excuses for not visiting the child, had not given the child the benefit of his presence in the child's life or the financial benefit which was offset by the family court, and that petitioner voluntarily chose to forego his visitation with the child. As such, the circuit court determined that petitioner had abandoned and neglected the child and adjudicated petitioner as an abusing parent accordingly.

The father filed a motion for a post-adjudicatory improvement period in January of 2018. The circuit court held a dispositional hearing in February of 2018, and heard evidence on petitioner's motion. At the close of evidence, the circuit court denied petitioner's request for a post-adjudicatory improvement period, finding that he never acknowledged his parental deficiencies and did not demonstrate that he was likely to fully participate in an improvement period. Further, the circuit court noted that visitation and maintaining contact with the child was a primary consideration in the case, yet petitioner never visited the child during the underlying proceedings and cancelled visits with the child, even though they were scheduled to accommodate his circumstances. Moreover, petitioner failed to visit with the child consistently even before the petition was filed, despite the fact that the family court reduced his monthly child support obligation to assist with financing visits, totaling nearly $2,400 over the course of two years. Based on this evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination was necessary for the child's welfare. It is from the February 9, 2018, order terminating his parental rights that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when,

---

[3]The permanency plan for the child is to remain in the care and custody of the mother, who successfully completed her improvement period and regained legal and physical custody of the child.

although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent. First, petitioner alleges that the circuit court erroneously adjudicated him when his failure to provide the necessary food, clothing, shelter, medical care, and education was primarily due to lack of financial means. Petitioner argues that his testimony established that his expenses met or exceeded his monthly income, and that he could not afford to regularly visit the child. Second, petitioner alleges that the circuit court erred in adjudicating him on the basis of abandonment when he attempted to visit the child when he could and maintained regular phone contact with the child. We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W.Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *In re F.S.*, 233 W.Va. at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W.Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *In re F.S.*, 233 W.Va. at 546, 759 S.E.2d at 777 (quoting *Cramer v. W.Va. Dep't of Highways*, 180 W.Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)).

Pursuant to West Virginia Code § 49-1-201, a neglected child is one

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]

Here, the circuit court found that sufficient evidence existed to adjudicate petitioner as an abusing parent apart from his lack of financial means. Petitioner failed to acknowledge any parental deficiencies throughout the proceedings below and did not accept responsibility for his failure to visit or provide for the child. While petitioner argues that his failure to visit the child

was based on lack of financial means, the record demonstrates that prior to the underlying proceedings, the family court reduced petitioner's monthly child support obligation by $100 a month in order to facilitate more visits with the child, totally $2,400 in savings over the course of two years. Despite the reduction, petitioner testified that he did not use the savings to visit the child in 2017, even though he admitted that a round-trip train ticket could be purchased for $200. Nor did petitioner allocate the savings to providing extra necessities for the child. Moreover, petitioner testified that he bought a car for $400 in 2017, but did not use the vehicle to visit the child. As such, based upon the demonstrated reduction in monthly child support obligation, petitioner could have allocated money to visit the child, but chose not to do so. In fact, the circuit court made arrangements for petitioner to visit the child during the proceedings below, but petitioner cancelled both visits. Importantly, petitioner traveled to West Virginia in November of 2017 to participate in the proceedings but cancelled his visit after the hearing and returned to Illinois without seeing the child. Accordingly, petitioner demonstrated a present refusal, failure, or inability to supply the child with the necessary food, clothing, shelter, supervision, medical care which was not primarily based upon his alleged lack of financial means. Therefore, we find no error in the circuit court's decision to adjudicate petitioner as an abusing parent. Because we find that the circuit court properly adjudicated petitioner of neglect based upon his failure to provide for or visit the child, we need not address whether the circuit court erred in adjudicating petitioner based upon abandonment.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 9, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: June 15, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating